```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**ADAM J. MECHE**                                            **CIVIL ACTION**

**VERSUS**                                                   **No. 07-1491**

**VLADIMIR I. VOLKOV,** *et al.*                             **SECTION: I/5**

### ORDER AND REASONS

Before the Court is defendant's, National Indemnity Company's ("NIC"), motion for summary judgment.[1] For the following reasons, NIC's motion is **GRANTED**.

### BACKGROUND

On March 31, 2006, plaintiff, Adam J. Meche ("Meche"), sustained physical injuries as a result of an automobile accident with defendant, Vladimir I. Volkov ("Volkov"). At the time of the aforementioned accident, Volkov was an employee of defendant, Selena Transport, L.L.C., ("Selena") and he was acting within the course and scope of his employment.[2]

Prior to Meche's accident with Volkov, the NIC, through its general agent, Cochrane and Company ("Cochrane"), issued a public liability insurance policy to Selena (the "subject policy") which was to be effective from November 22, 2005, to November 22, 2006.[3] Basin Insurance Associates ("Basin") acquired the subject policy on

---

[1] Rec. Doc. No. 34.

[2] Rec. Doc. No. 1-2, p. 1, para. II; *see also* Rec. Doc. No. 34-7.

[3] Rec. Doc. No. 34-4, p. 2.

behalf of Selena.[4]

On March 5, 2007, Meche filed the above-captioned lawsuit against Volkov, Selena, and NIC, in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[5]  Thereafter, on March 30, 2007, NIC removed Meche's lawsuit to this Court.[6]

In his complaint, Meche alleges that the accident at issue was caused solely by Volkov's negligence.  Meche further alleges that, in light of the fact that Volkov was a Selena employee acting within the course and scope of his employment, Selena is vicariously liable for Meche's injuries.[7]

Meche also alleges that NIC is liable for his injuries because the subject policy insured Selena and its employees against liability arising from negligent conduct.[8]  According to Meche, the subject policy was in "full force and effect" at the time of his accident with Volkov.[9]

On March 10, 2008, NIC filed this motion arguing that no genuine issue of material fact exists with respect to Meche's claims against NIC and, as such, NIC is entitled to judgment as a

---

[4] *Id*. at pp. 1-2.

[5] Rec. Doc. No. 1-2.

[6] Rec. Doc. No. 1.

[7] Rec. Doc. No. 1-2, p. 2, para. V.

[8] Rec. Doc. No. 1-2, p. 2, para. VI.

[9] *Id*.

matter of law.[10]  Specifically, NIC argues that, because the premium for the subject policy was not timely paid, the subject policy was cancelled prior to Meche's accident with Volkov and, as such, NIC cannot be held liable for Volkov's alleged negligence or the injuries caused thereby.

**LAW AND ANALYSIS**

**I.    STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with

---

[10]Rec. Doc. No. 34.

specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

**II. CANCELLATION OF THE SUBJECT POLICY**

It is undisputed that Washington state law governs whether the subject policy was effectively cancelled prior to Meche's automobile accident. Section 48.18.290(1)(c) of the Revised Code of Washington provides, in pertinent part, that "[i]f an insurer

cancels a policy . . . for nonpayment of premium, the insurer must deliver or mail the cancellation notice to the named insured at least ten days before the effective date of the cancellation." "The mailing of any [cancellation notice] shall be effected by depositing it in a sealed envelope, directed to the addressee at his or her last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter despository of the United States post office."  Wash. Rev. Code Ann. § 48.18.290(2) (West 2008).

"[A]n insurer is not required to prove actual receipt if statutory mailing procedures are followed."  *Isaacson v. DeMartin Agency, Inc.*, 893 P.2d 1123, 1125 (Wash. App. Div. 3 1995). Nevertheless, "[t]he insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the post office upon failure to find, or deliver the mailing to, the addressee."  Wash. Rev. Code Ann. § 48.18.290(2) (West 2008). "The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed."  Wash. Rev. Code Ann. § 48.18.290(3) (West 2008).

The ultimate purpose of Washington's notice requirement "is to enable the insureds . . . to take appropriate action in the face of impending cancellation of an existing policy."  *Olivine Corp. v. United Capital Ins. Co.*, 52 P.3d 494, 501 (Wash. 2002).  "Notice

enables the insured to adjust by either making the payments in default, obtaining other insurance protection, or preparing to proceed without insurance protection." *Id*.

### III. DISCUSSION

NIC argues that Meche's claims against NIC should be dismissed because the subject policy was properly cancelled effective March 30, 2006, the day before Meche's accident, for nonpayment of premium.[11] According to NIC, on February 22, 2006, Cochrane, as NIC's agent, sent a notice of cancellation[12] to Selena via certified mail at 17850 110th Place SE, Renton, Washington, 98055, (the "Renton address"), which is the mailing and premises address provided by Selena on its application for insurance, the address identified in the subject policy, and Selena's address on record with Washington's Secretary of State.[13] NIC claims that prior to mailing the notice of cancellation, it never received a request from Selena that notices pertaining to the subject policy be mailed

---

[11]Rec. Doc. No. 34-4, p. 8; *see also* Rec. Doc. No. 34-9 "Direct Notice of Cancellation." The Court notes that Darlene Johnson ("Johnson"), a Basin employee, emailed Cherida McFarlane ("McFarlane"), an underwriting assistant employed by Cochrane, requesting that the subject policy be cancelled effective February 21, 2006. Rec. Doc. No. 34-8. Thereafter, NIC informed McFarlane by email that the subject policy would be cancelled effective March 30, 2006. *Id*.

The Court also notes that although the aforementioned emails have not been authenticated, Meche has not objected to this Court's consideration of the same.

[12]Rec. Doc. No. 34-9 "Direct Notice of Cancellation."

[13]*Id*. at p. 9; *see also* Rec. Doc. Nos. 34-5 "Washington Sec. of State Cert. of Formation"; 34-7 "The Subject Policy"; 34-13 "Application for Insurance."

to a different address.[14]

NIC argues that, in light of the fact that the notice of cancellation was mailed on February 22, 2006, and that the notice provided that the subject policy would be cancelled effective March 30, 2006, NIC timely mailed the notice of cancellation to Selena.[15] NIC also argues that, in light of the fact that the notice of cancellation was never returned by the post office as undeliverable, and that Selena never requested that its mailing address on file with NIC be changed, NIC mailed the notice of cancellation to the proper address.[16] NIC contends that it properly cancelled the subject policy prior to Meche's accident with Volkov for nonpayment of premium and, as such, NIC cannot be held liable for Volkov's or Selena's alleged negligence.[17]

Meche argues that NIC's attempted cancellation of the subject policy was ineffective because (1) the notice of cancellation mailed by Cochrane was addressed to Serquie P. Saleev ("Saleev"),[18] not the named insured, Selena Transport, L.L.C.; (2) the notice was

---

[14]Rec. Doc. No. 34-4, p. 10; *see also* Rec. Doc. No. 34-10, pp. 10-11.

[15]As previously stated, Washington law provides that if an insurance policy is cancelled for failure to pay the premium, the insurer must mail or deliver a cancellation notice to the insured at least ten (10) days before the effective date of the cancellation. Wash. Rev. Code Ann. § 48.18.290(1)(c) (West 2008).

[16]Rec. Doc. No. 34-4, p. 10.

[17]*Id.*

[18]Saleev is a member of and the registered agent for Selena. Rec. Doc. No. 34-5, p. 2 "Washington Sec. of State Cert. of Formation."

-7-

not sent to Selena's "last address as known to the insurer or as shown by the insurer's records;" and (3) Cochrane did not have the authority to cancel the subject policy on behalf of NIC.[19]

With respect to Meche's argument that the notice of cancellation was ineffective because it was addressed to Saleev instead of Selena,[20] Meche argues that Washington law mandates that notices of cancellation be delivered to the "named insured."[21] Considering the fact that Selena, not Saleev, is the named insured on the subject policy, Meche argues that mailing the notice of cancellation to Saleev was ineffective and it did not lawfully cancel the subject policy.[22]

Meche's argument notwithstanding, Washington law provides that "[a] limited liability company's registered agent is its agent for service of process, **notice**, or demand required or permitted by law to be served on the limited liability company." Wash. Rev. Code Ann. § 25.15.025(1) (West 2008) (emphasis added). Considering the fact that Selena is a limited liability company and that Saleev is its registered agent,[23] Cochrane properly served Selena with the

---

[19] Rec. Doc. No. 39.

[20] *See* Rec. Doc. No. 34-9 "Direct Notice of Cancellation."

[21] Rec. Doc. No. 39, pp. 2-3.

[22] *Id*.

[23] *See* Rec. Doc. No. 34-5, p. 2 "Washington Sec. of State Cert. of Formation."

notice of cancellation by mailing said notice to Saleev.[24]

Concerning Meche's argument that the notice of cancellation was ineffective because it was not sent to Selena's last known address, Meche alleges that after the subject policy was issued, NIC mailed several documents to the Oregon Department of Transportation ("ODOT") and to the Federal Highway Administration ("FHA") which listed Selena's address as 19033 West Valley Highway, Suite D-101, Kent, Washington 98032, (the "West Valley address" or the "address at West Valley").[25] Considering the fact that the aforementioned documents were mailed after the subject policy was issued, Meche argues that the West Valley address was Selena's last address known to NIC and, as such, Cochrane was required by Washington state law to send any notice of cancellation to the West Valley address.

---

[24] Although the direct notice of cancellation is addressed to Saleev, instead of Selena, the purpose of the notice was to inform Selena that the subject policy would be cancelled. This is evidenced by the fact that the notice of cancellation (1) specifically identifies the subject policy issued to Selena by listing its policy number, i.e., 70TRN-391451; (2) specifically references NIC as the insurance company; and (3) explicitly states that the subject policy issued to Selena would be cancelled effective March 30, 2006. Rec. Doc. No. 34-9 "Direct Notice of Cancellation." No evidence has been presented indicating that Saleev received the direct notice of cancellation in any capacity other than as the registered agent for Selena.

[25] Rec. Doc. No. 39, p. 3. Meche alleges that the following documents were mailed either to the ODOT or to the FHA, and that each document listed Selena's West Valley address:

> (1) Form E, Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance filed with the ODOT (Dated November 23, 2005);
> (2) Form K, Notice of Cancellation of Motor Carrier Insurance Policy filed with the ODOT (Dated March 30, 2006); and
> (3) Notice of Cancellation filed with the FHA (Date illegible).

Rec. Doc. No. 34-10, p. 37; *See also* Rec. Doc. No. 39-3, pp. 7-9.

Despite the fact that the documents containing Selena's West Valley address may have been mailed after the subject policy was issued, the Court finds that the Renton address was Selena's last address known to NIC for purposes of mailing notices relating to the subject policy. When applying for the subject policy, Saleev, as Selena's registered agent, specifically identified the Renton address as Selena's mailing and premises address.[26] The Renton address also appears on the subject policy, itself, as Selena's address.[27]

Additionally, the evidence presented establishes that prior to Cochrane mailing the notice of cancellation on behalf of NIC, Selena never requested that NIC change its record mailing address from the Renton address to the West Valley address.[28] Moreover, as

---

[26]Rec. Doc. No. 34-13.

[27]Rec. Doc. No. 34-7.

[28]During her deposition, McFarlane provided the following sworn testimony:

> Q: Can you explain how or what you did to notify Selena of the cancellation of the policy?
>
> McFarlane: I sent them direct notice of cancellation certified.
>
> Q: You say certified, by certified mail?
>
> McFarlane: Yes
>
> Q: Was that done under your supervision at Cochrane?
>
> McFarlane: Yes, it was.

Rec. Doc. No. 34-10, p. 10.

(BREAK IN TRANSCRIPT)

> Q: Were you ever advised by Selena of a change of address prior to

of December 11, 2007, well after NIC allegedly mailed the documents containing the West Valley address to the ODOT and the FHA, Selena's Renton address was the contact address on file with the Washington Secretary of State.[29]

Considering the foregoing, the Renton address was Selena's last address known to NIC for purposes of mailing notices pertaining to the subject policy and, as such, NIC properly cancelled the subject policy by mailing the notice of cancellation at issue to the Renton address. Considering the fact that the subject policy was cancelled effective March 30, 2006,[30] the day before Meche's accident, NIC cannot be held liable for damages resulting from Volkov's and Selena's alleged negligence.[31]

---

> the time that you sent this letter of the Notice of Cancellation?
>
> McFarlane: No, I was not.
>
> Q: Were you aware of any other known address for Selena Transport at the time the Direct Notice of Cancellation went out?
>
> McFarlane: No.

Rec. Doc. No. 34-10, pp. 10-11.

The Court notes that Meche does not provide sufficient summary judgment evidence to contradict McFarlane's testimony.

[29]Rec. Doc. No. 34-5 "Washington Sec. of State Cert. of Formation."

[30]Rec. Doc. No. 34-9 "Direct Notice of Cancellation."

[31]The Court notes that although Meche argues that the Renton address was not the proper address for delivery of the cancellation notice, he does not allege that the notice was not received. However, the uncontested evidence presented by NIC indicates that Selena received NIC's notice and that it was aware of the impending cancellation of the subject policy.
McFarlane testified during her deposition that under her supervision, a direct notice of cancellation was mailed to Selena's Renton address. Rec. Doc. No. 34-10, p. 10. McFarlane also testified that the United States Post Office did not return the letter as undelivered and that Cochrane received a

With respect Meche's argument that Cochrane lacked the authority to cancel the subject policy, Meche contends that, pursuant to the agency agreement between Cochrane and NIC, Cochrane could not cancel the subject policy without specific written authorization from NIC.[32] According to Meche, NIC has not presented sufficient evidence to establish that Cochrane had the specific authority required to cancel the subject policy.[33] As such, Meche contends that NIC's motion should be denied because there remains a genuine issue of material fact as to whether Cochrane had the requisite authority to cancel the subject policy.[34]

Meche's argument notwithstanding, the summary judgment evidence presented by the parties establishes that Cochrane had the specific authority to issue and cancel the subject policy. In a sworn affidavit attached to NIC's motion, Cochrane's accounting manager, Linda Roller ("Roller"), states that NIC granted Cochrane

---

"proof of mailing." *Id*. at p. 11.
    Additionally, Johnson emailed Saleev on February 21, 2006, in order to notify Saleev that NIC would be issuing a notice of cancellation for the subject policy that same day. Rec. Doc. No. 34-15. Johnson also emailed McFarlane to tell her to "go ahead and cancel [the subject policy] for nonpayment . . . ." Rec. Doc. No. 34-8.

[32]Rec. Doc. No. 39, p. 5. Article IV of Cochrane and NIC's agency agreement provides "[t]he agent agrees to pay to the Company all premiums accruing on insurance written under this agreement, whether or not collected by the Agent from the assured. There shall be no flat cancellations of the policies or coverage bound or issued unless specifically authorized in writing by the Company." Rec. Doc. No. 39-4, p. 3.

[33]Rec. Doc. No. 39, pp. 5.

[34]*Id*. at pp. 5-6.

-12-

the specific authority to place and cancel the subject policy.[35] Moreover, Cherida McFarlane ("McFarlane"), an underwriting assistant employed by Cochrane, testified during her deposition that, in addition to granting Cochrane the general authority to place and cancel policies on behalf of NIC, NIC also granted Cochrane, in writing, the specific authority to cancel the subject policy.[36]

---

[35] Rec. Doc. No. 34-6, p. 1, para. 5.

[36] During her deposition, McFarlane provided the following sworn testimony concerning Cochrane's authorization to cancel the subject policy:

> Q: Is National Indemnity Company one of the companies that Cochrane is a general agent for?
>
> McFarlane: Yes.
>
> Q: All right.
>
>     Does Cochrane and Company have the authority to bind and cancel insurance policies on behalf of National Indemnity Company?
>
> McFarlane: Yes.
>
> Q: Is that done as a regular part of your business?
>
> McFarlane: Yes.

Rec. Doc. No. 34-10, pp. 6-7.

                    (BREAK IN TRANSCRIPT)

> Q: I'm going to ask you to look at Exhibit 15, and can you describe what that is?
>
> McFarlane: It's my request to National Indemnity to cancel the filings and give me the authority to send out direct notice of cancellation.
>
> Q: Is that an email that you personally sent out?
>
> McFarlane: Yes, it is.
>
> Q: Did you receive a response to that email?
>
> McFarlane: Yes, I did.

Accordingly,

**IT IS ORDERED** that NIC's motion for summary judgment is **GRANTED** and that Meche's claims against NIC are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, July 3, 2008.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

> Q:   Now can you look at Exhibit 16, and tell us what that document is?
>
> McFarlane:  It's [National Indemnity's] response allowing me to give- telling me that I can send out cancellation, and giving me the effective date of the cancellation.
>
> Q:   And what is the date you received that response from National Indemnity?
>
> McFarlane:  February 22, 2006.
>
> Q:   Did you have National Indemnity's authority to send out the direct notice of cancellation on February 22, 2006?
>
> McFarlane:  Yes.

Rec. Doc. No. 48-2, p. 2; *See also* Rec Doc. No. 34-8 "McFarlane's request for cancellation authority and NIC's response thereto."